**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG**

**WEST VIRGINIA RIVERS COALITION
and WEST VIRGINIA HIGHLANDS
CONSERVANCY,**

| |
|---|
| ELECTRONICALLY FILED |
| 04/22/2026 |
| U.S. DISTRICT COURT |
| Northern District of WV |

**Plaintiffs,**

**v.**

**AMSTED GRAPHITE MATERIALS LLC,**

Civil Action No.   **1:26-CV-46 (Kleeh)**

**Defendant.**

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br>AND CIVIL PENALTIES</u>

1.      This is a citizen suit for declaratory and injunctive relief as well as civil penalties against Defendant Amsted Graphite Materials LLC ("Amsted") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereafter the Clean Water Act ("CWA")), at its facility in Anmoore, West Virginia.

2.      As detailed below, Plaintiffs allege that Amsted has discharged and continues to discharge pollutants into waters of the United States in violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311, 1342, and the conditions and limitations of its West Virginia/National Pollutant Discharge Elimination System ("WV/NPDES") Permit WV0004707 issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365 (CWA citizen's suit provision).

4.      Plaintiffs mailed notice of the violations and its intent to file suit in a letter dated December 23, 2025, and addressed to Amsted, the United States Environmental Protection

Agency ("EPA"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

5.      More than sixty days have passed since the notice letter was sent.  EPA and WVDEP have not commenced or diligently prosecuted a civil or criminal action to redress the violations.  Moreover, neither EPA nor WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the violations listed in the December 23, 2025 notice letter.

6.      Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the source of the CWA violations is located in this District.

7.      Amsted is a limited liability company which is registered to do business in West Virginia.  Amsted owns and operates a facility that discharges wastewater from its facility at 268 Philippi Pike in Anmoore, West Virginia 26232.

8.      According to the 2022 Fact Sheet for its permit under Title V of the Clean Air Act, Amsted's Anmoore facility produces specialty carbon and graphite products by forming "green" carbonaceous shapes from raw materials consisting of petroleum coke and coal tar pitch. The "green" products are baked in natural gas-fired, high-temperature ovens and are then treated with liquid petroleum pitch and baked again prior to being processed into graphite using electrically heated furnaces. The graphite shapes are then machined and processed into varying products which are further processed to enhance their properties prior to shipment.

9.      Amsted is a person within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

10.      Plaintiff West Virginia Rivers Coalition, Inc., is a nonprofit organization incorporated in West Virginia. It has approximately 1,000 members. It works to promote the

2

overall health of West Virginia's waters and their downstream benefits. It not only seeks preservation of high-quality waters but also the improvement of waters that should be of higher quality. West Virginia Rivers Coalition, Inc., is dedicated to conserving and restoring West Virginia's exceptional rivers and streams.

11.     Plaintiff West Virginia Highlands Conservancy is a West Virginia noprofit organization that promotes, encourages, and works for conservation and an appreciation of the natural resources of West Virginia and the nation. The West Virginia Highlands Conservancy advocates for actions that protect, encourage, and enforce laws for the health and well-being of the natural world and its inhabitants. The organization's work includes the protection and preservation of rivers and streams in West Virginia particularly those with recreational, scenic, geological, biological, or historical importance. It currently has approximately

12.     Plaintiffs' members use, enjoy, and benefit from the water quality in streams receiving discharges directly from Amsted's facility, including an unnamed tributary to Anmoore Run and Anmoore Run, and indirectly into downstream waters, including Elk Creek, the West Fork River and the Monogahela River. Their recreational interests include wading, fishing, swimming, and generally enjoying the waters of those streams.  Their environmental, aesthetic, and recreational interests are impaired as a result of pollution from Amsted's operations.

13.     Plaintiffs' members, including Christa Clasgens and Nathan Rees,  recreate in areas downstream from the areas where Amsted's facility discharges pollutants, specifically the West Fork River close to the mouth of Elk Creek.  These members also have business interests dependent upon the health of downstream waters and the aquatic life that depends upon it, because each of them engages in professional guide services for clients fishing in those waters. Because of discharges of toxic pollutants from that facility, the members enjoy their visits to the

affected waters less than they would if pollution from Amsted Graphite were not a concern. Their aesthetic and recreational enjoyment has been reduced as a result of their concerns about the health of aquatic life and the health risks that pollution poses to them each personally.[1] In addition, both understand that continued discharges of pollution threaten their business interests, which are dependent upon the health of the West Fork River as a productive fishery. As a result, the environmental, aesthetic, and recreational interests as well as the business interests of these members are adversely affected by Amsted's excessive discharges of pollutants.  If Amsted's unlawful discharges ceased, the harm to the interests of these members would be redressed. An injunction would redress their injuries by preventing future violations of the limits in Amsted's permit.  Civil penalties would also deter Amsted from committing future violations.

14.    At all relevant times, Plaintiffs have been and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

15.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as an NPDES permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

16.    Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit-issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable

---

[1] See, *e.g.*, Ziyaei *et al.*, Association between exposure to water sources contaminated with polycyclic aromatic hydrocarbons and cancer risk: A systematic review, *Science of the Total Environment* 924:171261 (2024).

requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

17.     The Administrator of EPA authorized WVDEP, pursuant to Section 402(a)(2) of the CWA, 33 U.S.C. § 1342(a)(2), to issue NPDES permits on May 10, 1982. 47 Fed. Reg. 22,363 (May 24, 1982).  The applicable West Virginia law for issuing NPDES permits is the West Virginia Water Pollution Control Act, W. Va. Code § 22-11-1, et seq.

18.     Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), authorizes any "citizen" to "commence a civil action on his own behalf … against any person ... who is alleged to be in violation of ... (A) an effluent standard or limitation under this chapter or (B) an order issued by … a State with respect to such a standard or limitation."

19.     Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and "a permit or condition thereof issued" under Section 402 of the CWA, 33 U.S.C. § 1342.

20.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties.

21.     Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

22.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or

limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

23.     Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, the court may assess a civil penalty of up to $68,445 for each violation that occurred after November 2, 2015. 40 C.F.R. § 19.4.

## FACTS

24.     Amsted's Anmoore facility discharges industrial wastewater (cooling water, process water, groundwater) and storm water runoff through Outlets 003 and 009 into Anmoore Run and Outlet 050 into an unnamed tributary of Anmoore Run approximately 2 miles from its confluence with Elk Creek, a tributary of the West Fork River, a tributary of the Monongahela River. The facility also discharges untreated groundwater and storm water runoff through Outlets 027, 030, and 039 into Anmoore Run approximately 2 miles from its confluence with Elk Creek, a tributary of the West Fork River, a tributary of the Monongahela River. The facility discharges untreated storm water runoff and roof drains through Outlets 036 and 038 into Anmoore Run approximately 2 miles from its confluence with Elk Creek of the West Fork River, a tributary of the Monongahela River.

25.     Amsted's discharges from its facility are regulated under WV/NPDES Permit No. WV0004707. That permit was renewed on April 28, 2021, for a five-year term beginning on June 1, 2021, and ending on April 27, 2026.

26.     Section I.B. of that permit contains a compliance schedule that required Amsted to complete the construction of any necessary upgrades and achieve the final effluent limitations for several types of Polycyclic Aromatic Hydrocarbons (PAHs), Whole Effluent Toxicity

(WET), temperature (April), and temperature difference at Outlet 003; PAHs, WET, copper, lead, zinc, and aluminum at Outlets 009/050; and WET, zinc, and nitrite nitrogen at Outlet 030 by June 1, 2023.

27.    On July 21, 2023, the West Virginia Environmental Quality Board granted Amsted's motion to extend that deadline for ninety days, beginning on May 22, 2023.  On March 7, 2024, the Board extended the stay through April 30, 2024. The compliance deadline was therefore in effect on May 1, 2024.

28.    WVDEP issued interim limits in an administrative consent order, effective on January 24, 2024, that took the place of final average limits for some parameters at Outlets 003, 009, 030, and 050 until April 30, 2024, when the stay expired and the compliance deadline for those limits took effect.

29.    Amsted has violated those interim limits in the instances listed in Attachment A. Those violations are enforceable by Plaintiffs pursuant to § 505(a)(1)(B) of the CWA, 33 U.S.C. § 1365(a)(1)(B).

30.    WVDEP's administrative consent order does not and cannot modify Amsted's NPDES permit requirements. The 2024 order states that "[c]ompliance with the terms and conditions of this Order shall not in any way be construed as relieving [Amsted] of the obligation to comply with any applicable law, permit, other order, or any other requirement otherwise applicable." Order, p. 8, ¶4.

31.    In its monthly discharge monitoring reports, Amsted has also reported violating its final permit limits in the instances listed in Attachment A. Those violations are enforceable by Plaintiffs pursuant to § 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

32.     Amsted has violated its permit limits for many pollutants, including lead, copper, zinc and the following PAHs: benzo(a)pyrene, benzo(a)anthracene, benzo(b)fluoranthene, benzo(k)fluoranthene, dibenzo(a,h)anthracene, and indeno(1,2,3-cd)pyrene. EPA has listed those chemicals as toxic pollutants. 40 C.F.R. § 401.15(22), (44), (55), (65).

33.     The Agency for Toxic Substances and Disease Registry (ATSDR) has listed lead, zinc and those PAHs on its Priority List of Hazardous Substances. See http://www.atsdr.cdc.gov. The ATSDR has determined that those substances pose the most significant potential threat to human health. In its priority ranking, lead is second, benzo(a)pyrene is eighth, benzo(b)fluoranthene is tenth, dibenzo(a,h)anthracene is fifteenth, benzo(a)anthracene is thirty-eighth, benzo(k)fluoranthene is sixty-first, zinc is seventy-fourth, fluoranthene is one hundred and forty-fifth, chrysene is one hundred and forty-sixth, and indeno(1,2,3-cd)pyrene is one-hundred and seventy-ninth.

## CLAIM FOR RELIEF

34.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 33 above.

35.     Since at least November 2023, Amsted has discharged and continues to discharge pollutants from point sources, i.e., Outfalls 003, 009, 011, 030, 036, 038, and 050 at its Anmoore facility into the receiving streams listed in paragraph 24 above in excess of the limits allowed by its WV/NPDES Permit WV0004707 and by WVDEP's 2024 administrative consent order.

36.     The waters listed in paragraph 24 above are waters of the United States within the meaning of 33 U.S.C. § 1362(7).

37.     Amsted will continue to be in violation of its permit limits unless and until it constructs and operates an upgraded wastewater treatment system.

38.     Pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, Amsted is liable for civil penalties for each day of each violation of the interim limits in the 2024 WVDEP administrative consent order and the final limits in its permit.

39.     Amsted is subject to an injunction under the CWA ordering it to cease its permit violations and unpermitted discharges.

## REQUESTS FOR RELIEF

Wherefore, Plaintiffs request that this Court issue an order:

1.     Declaring that Amsted has violated and is in continuing violation of its WV/NPDES Permit WV0004707 and the CWA;

2.     Enjoining Amsted from operating its facilities in such a manner as will result in further violations of its WV/NPDES permit and the CWA;

3.     Ordering Amsted to immediately comply with effluent limitations contained in its WV/NPDES permit;

4.     Ordering Amsted to pay appropriate civil penalties for each violation of its WV/NPDES permit and the CWA;

5.     Awarding Plaintiffs their attorney fees, expert witness fees, and all other reasonable expenses incurred in pursuit of this action; and

6.     Granting other such relief as this Court deems just and proper.

Dated: April 22, 2026                  Respectfully submitted,

*/s/ J. Michael Becher*
J. Michael Becher (W.Va. Bar No, 10588)
Appalachian Mountain Advocates
P.O. Box 11571
Charleston, WV 25339
304-382-4798

Counsel for Plaintiffs

9