2026 WL 3124447
Only the Westlaw citation is currently available.
United States District Court, N.D.
Mississippi, Oxford Division.

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; and Mississippi State Conference of the NAACP, Plaintiffs
v.
X.AI CORP.; and MZX Tech LLC, Defendants.

NO. 3:26-CV-74-DMB-JMV
|
Signed 10/19/2026

**Attorneys and Law Firms**

Benjamin Grillot, Pro Hac Vice, Southern Environmental Law Center, Washington, DC, Carroll Edward Rhodes, Carroll E. Rhodes, Attorney, Hazlehurst, MS, Elias L. Quinn, Pro Hac Vice, Kirti Datla, Pro Hac Vice, Mary K. Rock, Pro Hac Vice, Earthjustice, Washington, DC, Elizabeth Putfark, Pro Hac Vice, Southern Environmental Law Center, Charlottesville, VA, Lauren E. Godshall, Pro Hac Vice, Rebecca Ramirez, Pro Hac Vice, Earthjustice, Houston, TX, Patrick Anderson, Pro Hac Vice, Southern Environment Law Center, Atlanta, GA, for Plaintiffs.

Christopher V. Popov, Pro Hac Vice, Vinson & Elkins, Houston, TX, Daniel Warren Van Horn, Butler Snow, Memphis, TN, James W. Beers, Jr., Jr., Pro Hac Vice, Troutman Pepper Locke, Washington, DC, James R. Conde, Pro Hac Vice, Michael B. Buschbacher, Pro Hac Vice, Taylor M. Myers, Pro Hac Vice, Walker Fortenberry, Pro Hac Vice, Boyden Gray PLLC, Washington, DC, Jeremy Charles Marwell, Pro Hac Vice, Patrick D. Traylor, Vinson & Elkins, Washington, DC, Patrick Ryan Beckett, Keri Elizabeth Herrington, Butler Snow LLP, Ridgeland, MS, for Defendants.

## OPINION AND ORDER

Debra M. Brown, UNITED STATES DISTRICT JUDGE

***1** The National Association for the Advancement of Colored People and the Mississippi State Conference of the NAACP sued X.AI Corp. and MZX Tech LLC, alleging that they violated the Clean Air Act and Mississippi's State Implementation Plan by constructing and operating a power plant comprised of gas-fired combustion turbines without a permit. The United States, on behalf of the Administrator of the Environmental Protection Agency, moves to intervene as a plaintiff and dismiss this case. Because the Administrator of the EPA is entitled to intervene in Clean Air Act citizen suits but nothing in the Clean Air Act allows the Administrator to unilaterally dismiss a citizen suit upon intervention, the United States will be allowed to intervene but will not be allowed to dismiss this case.

## I

### Procedural History

On April 14, 2026, the National Association for the Advancement of Colored People ("NAACP") and the Mississippi State Conference of the NAACP filed a complaint against X.AI Corp. and MZX Tech LLC in the United States District Court for the Northern District of Mississippi, alleging that the defendants violated, and continue to violate, the Clean Air Act and Mississippi's State Implementation Plan by constructing and operating the Colossus Gas Plant in Southaven, Mississippi. Doc. #1. The plaintiffs seek injunctive relief permanently enjoining the defendants from operating the Colossus Gas Plant except in accordance with the Clean Air Act and requiring the defendants to install and operate the best available control technology; civil penalties of up to $124,426.00 per day per violation; costs; and attorneys' fees. *Id.* at 42. On June 12, the plaintiffs filed a motion for a preliminary injunction requesting "an injunction prohibiting operation of the Defendants' Colossus Gas Plant until they have obtained the necessary permits and implemented the necessary pollution controls ...."[1] Doc. #51 at 4.

On June 15, 2026, the United States filed a motion "to intervene as of right as a plaintiff and to dismiss this case" ("Motion to Intervene/Dismiss"). Doc. #58 at 1. On July 1, the plaintiffs filed a motion "pursuant to Federal Rule of Civil Procedure 12(f)(2), to strike the United States' motion and associated memorandum in support ... as procedurally deficient" ("Motion to Strike"). Doc. #82 at 1.

On July 7, the United States filed an amended motion to intervene and dismiss ("Amended Motion to Intervene/Dismiss"), which differs from its original motion only in that

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

it specifies that the United States seeks intervention on behalf of the Administrator of the Environmental Protection Agency ("EPA"). Doc. #85. The plaintiffs responded in opposition to the Amended Motion to Intervene/Dismiss on July 10, Doc. #91; and the United States replied on July 24, Doc. #101.

On September 2, the United States filed a motion for entry of a written order on its Amended Motion to Intervene/Dismiss no later than September 10 ("Written Order Motion"). Doc. #117. The plaintiffs responded in opposition the next day, Doc. #120; and the United States replied on September 8, Doc. #122.

***2** On September 18, the United States filed a notice of "appeal to the United States Court of Appeals for the Fifth Circuit from this Court's August 24, 2026, constructive Order denying [its] amended motion for intervention and dismissal." Doc. #123 at 1. Three days later, the United States filed a motion to stay all proceedings pending its appeal ("Stay Motion"). Doc. #124. The defendants responded in support of the Stay Motion on September 22, Doc. #126; the plaintiffs responded in opposition on September 28, Doc. #128; and the United States replied on October 5, Doc. #133.

Also on September 28, the United States filed a "Motion to Grant Access to and Allow Use of Hearing Transcripts" ("Transcripts Motion"). Doc. #131.[2] It represents that "Defendants consent to this motion and Plaintiffs never responded with their opposition." *Id.* The plaintiffs did not respond to the motion.

## II

## Relevant Considerations

### A. Rule 24

Under Federal Rule of Civil Procedure 24(a)(1), "the court must permit anyone to intervene who ... is given an unconditional right to intervene by federal statute." *See Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (internal citation omitted) ("To intervene by right, the prospective intervenor either must be 'given an unconditional right to intervene by a federal statute,' or must meet each of the four requirements of Rule 24(a)(2)[.]") (quoting FED. R. CIV. P. 24(a)(1)). Rule 24 mandates that "[a] motion to intervene ... must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c). "It is the movant's burden to establish the right to intervene, but 'Rule 24 is to be liberally construed.' " *8fig, Inc. v. Stepup Funny, L.L.C.*, 135 F.4th 285, 290 (5th Cir. 2025) (quoting *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022)).

### B. Rule 41

"[A] plaintiff may dismiss an action without a court order by filing ... a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." FED. R. CIV. P. 41(a)(1)(A)(i).

## III

## Jurisdiction

As a preliminary matter, the Court is compelled to discuss its authority to address the United States' Amended Motion to Intervene/Dismiss (as well as the other pending motions). At the point when the United States filed its notice of appeal, this Court had not ruled on the Amended Motion to Intervene/Dismiss. The notice of appeal was therefore premature such that this Court's jurisdiction over the Amended Motion to Intervene/Dismiss was not altered by its filing. *See United States v. Stanley*, No. 5:11–cv–117, 2013 WL 5460056, at *1 (S.D. Miss. July 16, 2013) ("[A] premature notice of appeal does not divest the district court of jurisdiction.") (quoting *Mondrow v. Fountain House*, 867 F.2d 798, 800 (3rd Cir. 1989)).

The United States' description of and reference to a "constructive Order" denying its Amended Motion to Intervene/Dismiss on August 24, Doc. #123 at 1, carries no weight and certainly is not dispositive. On that date, the Court held a status conference with the parties during which it stated that it "intend[s] to deny" the Amended Motion to Intervene/Dismiss. Doc. #116 at 5. That statement is not (and was not then) an order. *See Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 481 (5th Cir. 2009) ("district court issued no legally binding orders or rulings" during conference with parties although it "gave a very clear indication" of how it intended to rule); *Dellew Corp. v. United States*, 855 F.3d 1375, 1380 (Fed. Cir. 2017) (court's "numerous substantive

comments during oral argument regarding the merits of the case and how it *intended* to rule" did not qualify as "a written or oral ruling on the merits that changes the parties' legal relationship").

***3** And the United States' assertion that a " 'district court's failure to timely rule' constitute[s] 'effective denial' and [an] appealable order," Doc. #123 at 1 (quoting *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 532 (5th Cir. 2024)), is not controlling either. In *Fort Worth*, the Fifth Circuit only held that a delay in ruling on a preliminary injunction motion, *not* a motion to intervene, *may* constitute an effective denial, and it did so under urgent circumstances not applicable here. *See* 100 F.4th at 535 (although district courts "do not necessarily deny a motion by failing to rule on a parties' requested timeline," circumstances constituted effective denial of motion for preliminary injunction against agency's Final Rule because "the Final Rule's fast-closing window for compliance demanded faster review of the motion").

None of the United States' attempts to create an appealable order when no appealable order exists change the fact that this Court has not yet ruled on the Amended Motion to Intervene/Dismiss.[3] This Court's jurisdiction to do so is unassailable.

## IV

## Motion to Strike

In their Motion to Strike, the plaintiffs submit that the United States' original Motion to Intervene/Dismiss and the associated memorandum should be stricken "pursuant to Federal Rule of Civil Procedure 12(f)(2) ... as procedurally deficient" "because (1) though the Clean Air Act grants a right of intervention to 'the Administrator' of the Environmental Protection Agency, there is no indication EPA is participating in this case, and (2) the motion to intervene was not accompanied by a complaint in intervention and did not articulate a claim for relief." Doc. #82 at 1. The United States responds that its "Amended Motion for Intervention and Dismissal in which it is acting on behalf of the Administrator of the EPA ... dispenses with Plaintiffs' contention that [it] may not intervene pursuant to 42 U.S.C. § 7604(c)(2);" and "[it] may intervene without a complaint in intervention and, in any event, any technical noncompliance with Rule 24(c) should be excused." Doc. #87 at 4.

Because the Amended Motion to Intervene/Dismiss superseded the original Motion to Intervene/Dismiss,[4] both the original Motion to Intervene/Dismiss and the Motion to Strike are denied as moot.

## V

## Amended Motion to Intervene/Dismiss

The United States argues that "[it] is entitled to intervene" under Federal Rule of Civil Procedure 24(a)(1) and 42 U.S.C. § 7604(c)(2); and "[it] is equally entitled to dismiss this case" because "[t]he NAACP may not pursue this Clean Air Act enforcement action over [its] objection" since the Clean Air Act "affords [it] primacy over when and how the statute should be enforced" and "Article II of the Constitution ... counsels in favor of that construction of the Clean Air Act by vesting the power to seek civil penalties on [its] behalf ... conclusively and preclusively in the Executive Branch." Doc. #86 at 1–2.

The plaintiffs respond that "[t]he United States's extraordinary position—that one plaintiff to an action can unilaterally dismiss the claims of another under Rule 41(a)(1)—has no grounding in the federal rules;" "nothing in th[e] language [allowing the Administrator to intervene] (or the rest of Section 7604) grants [the United States] a unilateral right to dismiss a suit brought under Section 7604(a);" and "the Clean Air Act expressly preserves the ability of people who are being harmed by unlawful air pollution to abate that harm through a suit when no one else does so and also expressly identifies when and how federal government actors can intervene in and influence these people's suits." Doc. #92 at 11, 14–15.

***4** The United States replies that "[s]tatutory text and structure, along with the pertinent precedent, confirm that private citizens' decisions about when and how to enforce the Clean Air Act cannot override those of federal enforcers;" and "Fed. R. Civ. P. 41 ... extends [its] dismissal authority as the Rule is 'subject to any applicable federal statute.' " Doc. #102 at 2, 16 (ellipses omitted) (quoting FED. R. CIV. P. 41(a)(1)(A)).

### A. Intervention

The Clean Air Act's citizen suit provision states that "[i]n any action under this section, the Administrator [of the EPA], if not a party, may intervene as a matter of right at any time in the proceeding." 42 U.S.C. § 7604(c)(2). The plaintiffs do not dispute that the Administrator generally has a right to intervene; however, they take issue with the way in which the United States, on behalf of the Administrator, attempts to intervene in this case.

Because the Clean Air Act gives the Administrator the unconditional right to intervene, the United States is permitted to intervene on behalf of the Administrator as a matter of right. What the United States can and cannot do after intervention, however, is another matter.

### B. Dismissal

#### 1. Rule 41

In maintaining that upon its intervention, it can dismiss the plaintiffs' lawsuit, the only authority in the Federal Rules of Civil Procedure the United States cites is Rule 41(a)(1)(A), which provides that "[s]ubject to ... any applicable federal statute, the plaintiff may dismiss an action without a court order." The "subject to" language in Rule 41(a)(1)(A) is more appropriately conceived of as a list of exceptions to the general rule, i.e., instances when a court order is required for a plaintiff to dismiss an action. [5] *See Smith v. Sch. Bd. of Concordia Par.*, 181 F.4th 629, 635 (5th Cir. 2026) (referring to "exceptions" in Rule 41(a)(1)(A), which "specif[y] the conditions that *limit* self-executing dismissal") (emphasis added). And while Rule 41 allows a plaintiff to dismiss its own action, it says nothing about dismissing *another* plaintiff's action. Because Rule 41 does not grant the United States the right to dismiss it asserts, such right must exist, if at all, in the Clean Air Act itself.

#### 2. Clean Air Act

While the United States details its reasons for determining that this action should be dismissed, it also acknowledges that such reasons are irrelevant to whether it can voluntarily dismiss this action under Rule 41(a). Doc. #86 at 8–9. Accordingly, the Court will not consider the United States' reasons for dismissal and the plaintiffs' challenges to those reasons. [6]

##### *a. Text and Structure*

The United States argues that "[t]he Clean Air Act's structure and allocation of enforcement authority confirm th[e] interpretation" that the right of the Administrator to intervene includes the right to dismiss because "[n]othing in the statute suggests that Congress, when enacting the citizen-suit provision, deputized citizens to 'commandeer the federal enforcement machinery,' especially where the United States has determined that a citizen's suit would not serve the public interest." Doc. #86 at 11 (quoting *Dubois v. Thomas*, 820 F.2d 943, 949 (8th Cir. 1987)).

***5** The plaintiffs respond that "the United States does not identify any Clean Air Act text that expressly grants it 'the right to dismiss a citizen suit;' " "[p]olicy arguments or an official's preferences about what power they should have 'cannot create an ambiguity when the words on the page are clear;' " and "the United States's view that Section 7604 secretly grants it this expansive power cannot be squared with the statutory text." Doc. #92 at 15 (quoting *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 370, 138 S.Ct. 1348, 200 L.Ed.2d 695 (2018)).

The United States replies that the fact "that the citizen-suit provision does not expressly state that [it] may dismiss a citizen suit ... is not dispositive;" and "[its] interpretation respects the statute's careful allocation of enforcement authority and effectuates the procedural constraints that prevent 'intrusive,' overzealous private enforcement." Doc. #102 at 2, 4 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987)).

The United States points to several mechanisms in the Clean Air Act which limit citizen suits and provide for the EPA's involvement, including "[its] unconditional right to notice of any citizen-suit complaint upon filing, its right to 60-days' notice before filing any complaint alleging violations of emission standards or limitations, ... its entitlement to intervene 'as a matter of right at any time,' " and its right "to displace any planned citizen action by filing a federal civil action and 'diligently prosecuting' that action." Doc. #86 at 13 (citing 42 U.S.C. § 7604(b)(1), (c)(2), (c)

(3)). The plaintiffs argue that though "the political branches consciously and carefully addressed the government's role in [§ 7604,] ... that does not mean courts should read this provision to grant the government *more* authority than the provision's text does;" and "the Act is structured to preclude a person from suing only if the government is already bringing the polluter into compliance with the relevant requirements." Doc. #92 at 16.

The Clean Air Act specifies how the federal government may participate in Clean Air Act citizen suits. The plaintiff, in some cases, must give notice to the Administrator prior to bringing a suit; the Administrator may intervene in any citizen suit if he is not already a party; and the federal government may submit comments on proposed consent judgments. 42 U.S.C. § 7604(b)(1)(A), (b)(2), (c)(2), (c)(3).

The United States is correct that the EPA and state agencies are intended to be the primary enforcers of the Clean Air Act and similar environmental statutes. *See Gwaltney*, 484 U.S. at 60, 108 S.Ct. 376 (in nearly identical provision in Clean Water Act, "the citizen suit is meant to supplement rather than to supplant governmental action," "and ... citizen suits are proper only 'if the Federal, State, and local agencies fail to exercise their enforcement responsibility' ") (quoting S. REP. NO. 92-414, at 64 (1971), *reprinted in* 2 A LEGISLATIVE HISTORY OF THE WATER POLLUTION CONTROL ACT AMENDMENTS OF 1972, at 1482 (1973)); *Env't Conservation Org. v. City of Dall.*, 529 F.3d 519, 528 (5th Cir. 2008) ("primary regulation of pollution should be by the EPA") (quoting *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 579 (5th Cir. 1996)). However, the EPA's role as a primary enforcer of the Clean Air Act does not mean that the federal government retains complete control over *all* Clean Air Act litigation.

The Clean Air Act specifies only one situation where the federal government may preclude a citizen suit—no action may be brought against a person for an alleged violation of an emissions standard, limitation, or order of the Administrator or a state "if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order." 42 U.S.C. § 7604(b)(1)(B). The United States does not argue that § 7604(b)(1)(B) applies here; nor can it honestly do so, when the Administrator has not brought a civil action to require the defendants here to comply with the Clean Air Act. Indeed, if the United States' interpretation was correct and the Administrator could dismiss *any* citizen suit at *any* time, there would be no need for the diligent prosecution requirement in § 7604(b)(1)(B). *See Corley v. United States*, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ....") (quoting *Hibbs v. Winn*, 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004)). [7]

***6** Nor does § 7604(c)(2)—the provision granting the Administrator the right to intervene—allow the Administrator to unilaterally dismiss a citizen suit once he has intervened. The United States contends that " 'if the Executive Branch opposes a particular citizen suit,' [it] may intervene to 'bring the Government's views to the attention of the court;' " and "[t]hrough this motion, [it] does just that." Doc. #86 at 13 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 188 n.4, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). However, *Laidlaw* says nothing authorizing the government to dismiss the case entirely based on its right to intervene. In fact, if the United States had the power that it insists it has, there would be no need to "bring [its] views to the attention of the court" because as the United States points out, "[w]here 'Rule 41 entitles the movant to a dismissal,' a 'district court has no adjudicatory role.' " Doc. #86 at 9 (quoting *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 n.4, 143 S.Ct. 1720, 216 L.Ed.2d 370 (2023)).

The United States argues that its interpretation would further Congress's purpose because "Congress did not contemplate" that citizen suits would be allowed "without regard for the suit's impacts on federal interests;" and "[d]eclining to dismiss this action would ... render ineffective the express procedural constraints Congress enacted to protect against 'the obvious danger of unlimited public actions' and confine citizen suits to their interstitial, secondary role." Doc. #86 at 12 (quoting *NRDC, Inc. v. Train*, 510 F.2d 692, 700 (D.C. Cir. 1974)). The plaintiffs respond that "the text's focus is on ensuring air pollution standards are met and people are protected;" and "[t]here is no way to read [the citizen suit provision] to suggest that Congress, having gone out of its way to preserve people's ability to sue to *stop* unlawful pollution when the government has not, also implicitly authorized the government to dismiss those very suits at its whim because it would prefer that the unlawful pollution *continue*." Doc. #92 at 16, 18.

It is readily apparent that by enacting the citizen suit provision, Congress intended to allow individuals to sue even when federal and state governments may, for whatever reason, decline to enforce the Clean Air Act. *See* S. REP. NO. 91-1196, at 21 (1970) ("If the Secretary and State and local agencies should fail in their responsibility, the public would be guaranteed the right to seek vigorous enforcement action under the citizen suit provisions of section 304."); *id.* at 37 ("[I]f the agency had not initiated abatement proceedings following notice [of intent to file a citizen suit] or if the citizen believed efforts initiated by the agency to be inadequate, the citizen might choose to file the action. ... [I]f the court viewed the agency action as inadequate, it would have jurisdiction to consider the citizen action notwithstanding any pending agency action."). The text and structure of the citizen suit provision confirm this reading. In addition to the provisions detailed above setting out the federal government's role in citizen suits and barring citizen suits only when the Administrator is diligently prosecuting a civil action, the Clean Air Act allows for actions "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary." 42 U.S.C. § 7604(a)(2). Evidently, Congress contemplated that citizen suits may not always align with the EPA's judgment. [8]

***7** In short, the Clean Air Act cannot be interpreted to grant the United States the right to dismiss it asserts here.

*b. Case Law*

The United States asserts that "[n]umerous courts have recognized that the federal government's enforcement prerogatives carry the day over citizens' contrary enforcement preferences" and "have stressed the primacy of the United States' enforcement discretion when citizen enforcers seek remedies beyond what the government deems proper;" and "[t]he intrusion of allowing this action to proceed over the United States' objection would be no less significant." Doc. #86 at 14, 15.

The plaintiffs respond that "[n]o court has agreed with the United States's position; instead, courts have rejected its logic;" and the "cases the United States cites" are "off-point" because "[e]ach arose in a context where a government acted to require abatement of unlawful pollution, not one where the government acted to shield the polluter from liability." Doc. #92 at 18, 19.

The United States replies that "[t]he NAACP misreads [*Gwaltney*] to apply only to suits that 'address past violations,' " and "[t]he factual differences between th[e] cases [it cites] and this one are irrelevant[ because e]ach case confirmed the legal proposition that citizens' enforcement prerogatives cannot override those of the government." Doc. #102 at 6, 7 n.3.

The United States first argues that "the Supreme Court stressed the 'danger' of allowing citizens to supplant federal enforcement decisions in the materially similar Clean Water Act context." Doc. #86 at 14 (citing *Gwaltney*, 484 U.S. at 60–61, 108 S.Ct. 376). In *Gwaltney*, the Supreme Court illustrated the danger of "permitting citizen suits for wholly past violations of the Act" with the following hypothetical:

> Suppose that the Administrator identified a violator of the Act and issued a compliance order under § 309(a). Suppose further that the Administrator agreed not to assess or otherwise seek civil penalties on the condition that the violator take some extreme corrective action, such as to install particularly effective but expensive machinery, that it otherwise would not be obliged to take. If citizens could file suit, months or years later, in order to seek the civil penalties that the Administrator chose to forgo, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably.

484 U.S. at 60–61, 108 S.Ct. 376.

Not only is the present case a citizen suit for alleged *ongoing* violations of the Clean Air Act, the problem illustrated in *Gwaltney* is not present here. The hypothetical in *Gwaltney* involves a situation where the Administrator has issued a compliance order and the violator has agreed to take some corrective action; in that instance, the possibility of a later citizen suit could undermine the Administrator's ability to reach such agreements. Here, the Administrator has made no effort to bring the alleged violators into compliance, and there is no indication that the Administrator intends to do so.

The other cases the United States cites similarly involve situations where the EPA made some effort to enforce the Clean Air Act or Clean Water Act—most commonly, these cases address the effect of a consent decree between the EPA and the polluter on citizen suits. *See, e.g., Env't Conservation Org.*, 529 F.3d at 528 (allowing citizen suits "where compliance was brought about as the result of an EPA enforcement action and a court-approved consent decree" "would discourage defendants in a citizen [suit] from entering a consent decree with federal or state enforcement agencies, because defendants would remain exposed to duplicative penalties"); *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir. 2004) (post-consent judgment citizen suit "second-guessing ... the EPA's assessment of an appropriate remedy ... fails to respect the statute's careful distribution of enforcement authority" because Clean Air Act "permit[s] citizens to act where the EPA has 'failed' to do so, not where the EPA has acted but has not acted aggressively enough in the citizens' view"); *U.S. E.P.A. v. City of Green Forest*, 921 F.2d 1394, 1403, 1404 (8th Cir. 1990) ("[C]itizens' claims brought prior to a government action are properly dismissed when a consent decree is entered in a later-filed EPA action" because "as a practical matter there was little left to be done after the EPA stepped in and negotiated a consent decree."); *Karr v. Hefner*, 475 F.3d 1192, 1198 (10th Cir. 2007) (in applying diligent-prosecution standard, courts "should not interpret [Clean Water Act citizen suit provision] in a manner that would undermine the EPA's ability to reach voluntary settlements with defendants"). Because the Administrator has not taken any action to enforce the Clean Air Act here, these cases do not support the United States' position.

### *c. Constitutional Avoidance*

***8** The United States argues that "[p]ermitting the NAACP to seek civil penalties payable to the United States on terms to which the United States objects raises serious concerns under Article II" because "[p]unishing unlawful conduct through civil penalties payable to the Treasury on behalf of the United States is 'a quintessentially executive power;' " "[d]ismissal is necessary regardless of the fact that the NAACP seeks not just civil penalties but also injunctive relief" because "there is no plausible basis to distinguish a citizen suit that seeks only penalties from one that seeks penalties and injunctive relief;" requiring it to diligently prosecute its own enforcement action in order to preclude a citizen suit "would only exacerbate the Article II violation by stripping the Executive Branch of discretion to determine that *no* enforcement action is the proper course;" and "[i]nterpreting the Clean Air Act to provide the control mechanism that [it] invokes here—the ability to dismiss the citizen suit—would avoid these serious Article II concerns." Doc. #86 at 19, 21, 22 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 219, 140 S.Ct. 2183, 207 L.Ed.2d 494 (2020)).

The plaintiffs respond that "[w]ithout any textual hook for the United States's claimed dismissal right, ... constitutional avoidance can play no role;" but regardless, "[t]he Clean Air Act citizen suit provision ... does not infringe on Article II because it authorizes private parties to seek redress on their own behalf, not on behalf of the federal government." Doc. #92 at 24, 26.

The United States replies that "even though [it] need not show that its reading is 'the best one' for avoidance to apply, ... [its] interpretation is the only reasonable construction of the citizen-suit provision given the serious Article II considerations at play;" and "[it] need only establish—and has established—that interpreting the citizen-suit provision to authorize dismissal avoids 'serious constitutional doubts.' " Doc. #102 at 8–9 (quoting *United States v. Hansen*, 599 U.S. 762, 781, 138 S.Ct. 830, 200 L.Ed.2d 122 (2023); then quoting *Jennings v. Rodriguez*, 583 U.S. 281, 286, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018)).

The canon of constitutional avoidance counsels that "[w]hen 'a serious doubt' is raised about the constitutionality of an Act of Congress," courts should "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Jennings*, 583 U.S. at 296, 138 S.Ct. 830 (quoting *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932)). "[C]onstitutional avoidance 'comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.' " *United States v. Texas*, 181 F.4th 548, 559 (5th Cir. 2026) (quoting *Nielsen v. Preap*, 586 U.S. 392, 419, 139 S.Ct. 954, 203 L.Ed.2d 333 (2019)). "The canon 'has no application' absent 'ambiguity.' " *Id.*

Here, there is no "fairly possible" interpretation of the Clean Air Act that would give the United States the right to unilaterally dismiss a citizen suit once it intervenes in such suit. The United States fails to identify any ambiguity in the statute's text to which the Court could and should apply the canon of constitutional avoidance. The Court agrees with the United States that the United States' interpretation need not

be "the best one" for constitutional avoidance to counsel in favor of adopting it. *Hansen*, 599 U.S. at 781, 143 S.Ct. 1932. But, for the reasons discussed in the previous section, the text of the Clean Air Act does not support such an interpretation. Constitutional avoidance does not allow the Court to invent a right that does not exist in the statute. *See Jennings*, 583 U.S. at 286, 138 S.Ct. 830 ("[A] court relying on [the constitutional avoidance] canon still must *interpret* the statute, not rewrite it.").

Further, even if it was possible to interpret the Clean Air Act to give the United States the right it seeks, the Court does not share the "serious constitutional doubts" that the United States identifies.

"Article II provides that 'the executive Power shall be vested in a President,' who must 'take Care that the Laws be faithfully executed.' " *Seila Law*, 591 U.S. at 213, 140 S.Ct. 2183 (quoting U.S. CONST. art. II, § 1, cl. 1; id., § 3). "The entire 'executive Power' belongs to the President alone." *Id.* Though "[t]he Constitution charges the Executive Branch with enforcing federal law," "sometimes Congress also allows private parties to enforce the law through civil litigation." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 367, 145 S.Ct. 2219, 222 L.Ed.2d 567 (2025); *see Davis v. Passman*, 442 U.S. 228, 241, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) ("Statutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition, who may enforce them and in what manner."). That the Clean Air Act's citizen suit provision allows private parties to enforce the Clean Air Act through civil litigation, therefore, does not make citizen suits an impermissible exercise of the President's executive power.

***9** As to the United States' argument that seeking civil penalties is a quintessentially executive function, although the Supreme Court, in determining that the Director of the Consumer Financial Protection Bureau exercises executive power, held that the Director's "power to seek daunting monetary penalties against private parties *on behalf of the United States*" is "a quintessentially executive power," *Seila Law*, 591 U.S. at 219, 140 S.Ct. 2183 (emphasis added), it does not follow that all suits seeking civil penalties require the exercise of nondelegable executive power. The citizen suit provision allows "any person [to] commence a civil action *on his own behalf*," 42 U.S.C. § 7604(a) (emphasis added), not on behalf of the United States. And as the Supreme Court recognized in *Laidlaw* in addressing the Clean Water Act:

> It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress. Civil penalties can fit that description. To the extent that they encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct.

528 U.S. at 185–86, 120 S.Ct. 693. Citizen suit plaintiffs bring actions on their own behalf, seeking remedies, including civil penalties, to address their own injuries. Doing so is not equivalent to an administrative agency seeking penalties on behalf of the United States.

Other district courts to consider the constitutionality of citizen suits have reached the same conclusion. *See, e.g.*, *Campaign Legal Ctr. v. Iowa Values*, 573 F. Supp. 3d 243, 256 (D.D.C. 2021) (citizen suit provision does not violate Article II because "plaintiff is not vindicating a public right in the courts" but rather "vindicating its own unique and particularized ... injury"); *Atl. States Legal Found., Inc. v. Buffalo Envelope, Div. of Am. Envelope Co.*, 823 F. Supp. 1065, 1075 (W.D.N.Y. 1993) ("Under EPCRA, Congress ... has granted a concurrent right to enforce the statute to the Administrator and to private individuals who are aggrieved by violations of the statute. The fact that the monetary penalties sought are payable to the Treasury rather than to the private individual is of no moment. Such penalties redress the injuries of private parties whose interests are met through compliance with EPCRA's reporting requirements. The civil fine provisions are designed to effect compliance through general and specific deterrence."); *N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.*, 200 F. Supp. 2d 551, 556 (E.D.N.C. 2001) ("Defendant's claim ... that the power to bring a civil enforcement action is strictly executive, to be enjoyed by the executive branch to the exclusion of private citizens, is unsupported in the law. As noted by the Supreme Court, 'statutory rights and obligations are established by

Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition, who may enforce them and in what manner.' ") (quoting *Davis*, 442 U.S. at 241, 99 S.Ct. 2264).

As to the United States' argument that being required to diligently prosecute an enforcement action in order to preclude a citizen suit would undermine its discretion not to bring an enforcement action, though "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion," *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), citizen suits do not interfere with the EPA's discretion to enforce the Clean Air Act. Private citizens may sue when the EPA and state agencies choose to forego enforcement, but they cannot challenge the EPA's discretion not to enforce. *See* 42 U.S.C. § 7604(a)(2) (allowing citizen suits "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is *not discretionary* with the Administrator") (emphasis added).

### 3. Summary

***10** Because the United States does not have the right under the Clean Air Act or the Federal Rules of Civil Procedure to unilaterally dismiss the plaintiffs' citizen suit over the plaintiffs' objection, the United States' plan to dismiss this case upon intervention will not be permitted.

### C. Rule 24(c)

In violation of Federal Rule of Civil Procedure 24(c), the United States did not attach to its Amended Motion to Intervene/Dismiss a pleading setting out the claim or defense for which it seeks intervention. The only purpose the United States identifies for its intervention is to voluntarily dismiss this case. Because, for the reasons discussed above, the United States will not be allowed to do so, the Court is left without anything explaining the United States' position in this litigation, much less a pleading setting forth the claim or defense for which it intervenes. So, the Court will require the United States to file such a pleading that meets Rule 24(c)'s requirements.

## VI

## Other Pending Motions

As explained above, because the United States' notice of appeal is premature; and because contrary to the United States' assertion that it is appealing the constructive denial of its motion to intervene, this order grants the United States' intervention request, [9] the United States' Stay Motion (which asks the Court to stay this litigation in its entirety pending its appeal) is denied as moot. [10] *See Reddick v. Medtronic, Inc.*, No. 22-2715, 2022 WL 16549429, at *3 (E.D. La. Oct. 31, 2022) ("Plaintiff's motion to stay pending appeal is moot, because there is nothing to be appealed.").

Additionally, given the entry of this order and the expiration of the deadline the United States' unilaterally (and seemingly arbitrarily) purported to set for this Court to enter a written order on its Amended Motion to Intervene/Dismiss, the Written Order Motion is also denied as moot.

Finally, because the United States is allowed to intervene and therefore should have access to the transcripts it seeks, the United States' Transcripts Motion is denied as moot as well. [11]

## VII

## Conclusion

For the reasons explained above:

1. The United States' Amended Motion to Intervene/Dismiss [85] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent the United States is allowed to intervene. The motion is DENIED in all other respects.

2. No later than October 23, 2026, to the extent the United States wants to participate in this litigation, it must file a pleading meeting the requirements of Federal Rule of Civil Procedure 24(c). [12]

***11** 3. The pending Motion to Intervene/Dismiss [58], Motion to Strike [82], Written Order Motion [117], Stay

Motion [124], and Transcripts Motion [131] are **DENIED as moot**.

**SO ORDERED**, this 19th day of October, 2026.

**All Citations**

--- F.Supp.3d ----, 2026 WL 3124447

## Footnotes

1 The defendants responded in opposition on June 15. Doc. #60. With leave of the Court, the defendants filed an amended response on July 13, Doc. #93; and the plaintiffs replied on July 15, Doc. #96.

2 Specifically, the United States requests "use of the transcripts in this case from hearings that occurred June 29, August 5, and August 24, 2026, in briefs to be filed by October 15, 2026, in the U.S. Court of Appeals for the Fifth Circuit;" and "that the Court make the transcripts of the June 29 and August 5 hearings available for [its] use." Doc. #131 at 1. The United States is incorrect that a hearing occurred in this case on any of those dates. The Court held telephonic status conferences with the parties on June 29, August 5, and August 24. Docs. #79, #104, #114.

3 In denying the United States' October 9 motion to stay this litigation pending its appeal, the Fifth Circuit recognized that this Court "has not fully determined this issue."

4 *See Trejo-Munoz v. Henderson*, 615 F. Supp. 3d 558, 562 n.1 (S.D. Tex. 2022) ("[T]he original motion ... is superseded by the amended motion, and accordingly should be denied as moot.").

5 The other exceptions are "Rules 23(e), 23.1(c), 23.2, and 66." FED. R. CIV. P. 41(a)(1)(A). Each of these rules requires court approval before an action may be voluntarily dismissed.

6 The plaintiffs request that "[t]o the extent this Court views the substance of the United States's references to national security relevant, it should seek extra briefing on the issue and allow the development of a record beyond the United States's improperly submitted declaration." Doc. #92 at 23. For the above reasons, the Court does not consider the United States' national security concerns relevant and thus will not require additional briefing on that topic.

7 The United States, in urging that the "diligent-prosecution bar" does not contradict its interpretation, focuses on the sixty-day notice requirement. It argues that " 'governmental actors' 'preeminent role' in enforcement does not shift to citizens merely because they wait out the 60-day clock," and cites cases holding that the Administrator may preclude citizen suits by bringing enforcement proceedings more than sixty days after receiving notice. Doc. #102 at 5 (citing *EPA v. City of Green Forest*, 921 F.2d 1394, 1404 (8th Cir. 1990); and *Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124, 127 (2d Cir. 1991)). However, the sixty-day notice requirement is not at issue here; and the United States, on behalf of the Administrator, has indicated that it has no intention of bringing enforcement proceedings. *See* Doc. #86 at 15 ("[T]he United States does not simply prefer less stringent enforcement than the private enforcers. Rather, the United States has determined that *no* relief sought by this civil enforcement action ... is consistent with federal policy and the public interest."). Accordingly, the United States' argument regarding the sixty-day notice requirement is not relevant here.

8 The plaintiffs point out that in 1990, "Congress considered amending the Clean Air Act to provide the United States with similar authority to what it seeks here," though the "amendment was *narrower* than what the United States argues for here," and the amendment ultimately failed. Doc. #92 at 17. The United States

replies that "[t]he NAACP's surmise about why one amendment was offered and why Congress 'declined to adopt the new legislation' is 'particularly dangerous' 'speculation' that the Supreme Court has repeatedly disfavored," and "[i]t is also plausible that Congress rejected the amendment as unnecessary." Doc. #102 at 6 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 670, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020)).

In 1990, an amendment was proposed which would have, among other things, altered what is now § 7604(c)(2) to read:

> In any action under this section, the Administrator, if not a party, may intervene as a matter of right at any time in the proceeding. In such intervention, the Administrator may substitute himself as the plaintiff with regard to any claim for civil penalties. Upon such substitution, the citizen plaintiff's claims for civil penalties shall abate. ...

Nickles (and Others) Amendment No. 1373 § 609(a)(3) (Mar. 26, 1990), *reprinted in* 4 COMM. ON ENV'T AND PUB. WORKS, 103D CONG., LEGISLATIVE HISTORY OF THE CLEAN AIR ACT AMENDMENTS OF 1990, at 6406, 6427 (1998). While "[t]he fact that [a] proposal [to insert language] was made suggests that its proponents thought it necessary," *Cook v. Gralike*, 531 U.S. 510, 521, 121 S.Ct. 1029, 149 L.Ed.2d 44 (2001), "speculation about why a later Congress declined to adopt new legislation offers a 'particularly dangerous' basis on which to rest an interpretation of an existing law a different and earlier Congress did adopt," *Bostock v. Clayton Cnty.*, 590 U.S. 644, 670, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020) (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990)). Considering that the 1990 Congress that rejected the proposed amendment is not the same as the 1970 Congress that enacted the citizen suit provision, at most, the proposed amendment is evidence that at least some members of the 1990 Congress believed that the citizen suit provision as written does not allow the Administrator to intervene and subsequently terminate a citizen plaintiff's claim.

9 "[A]n 'order allowing intervention is interlocutory and may not be appealed immediately.' " *Aldridge ex rel. United States v. Stone Cnty. Hosp., Inc.*, 161 F.4th 257, 261 (5th Cir. 2025) (quoting *In re Estelle*, 516 F.2d 480, 484 (5th Cir. 1975)).

10 As mentioned above, the Fifth Circuit denied the United States' motion to stay this litigation.

11 The Court acknowledges the defendants' pending June 15 motion to dismiss and June 19 "Joint Motion to Stay Initial Disclosures, Continue Case Management Conference, Set Pre-Hearing Deadlines for the Preliminary Injunction Hearing and to Set a Case Management Conference." Docs. #54, #72. Those motions will be addressed by separate order.

12 If the United States files a Rule 24(c) pleading that requires a response, any such response must be filed no later than October 30, 2026.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.